**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION**

Case No.:_____

**J. LOUISE DIETZEN**,

      Plaintiff,

v.

**JASON HERRING, individually, and
VIVIFY TECHNOLOGY
CORPORATION, a Florida corporation**,

      Defendant.

**<u>VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

COMES NOW Plaintiff J. LOUISE DIETZEN, by and through undersigned counsel, and sues Defendant JASON HERRING ("Herring" or "Defendant"), individually, and VIVIFY TECHNOLOGY CORPORATION ("Vivify"), a Florida corporation.

**<u>NATURE OF THE ACTION</u>**

1. Between August 2025 and April 2026, Herring engaged in the unregistered offer and sale of securities to United States retail investors and consumers in violation of, among others, the Securities Act of 1933 through Vivify.  Herring solicited investments to raise capital for Vivify's "Pay-to-Play" program and specifically sought out Plaintiff to assist him in those capital-raising efforts. Herring incentivized investment by alleging that Vivify was required to raise fifteen (15) million dollars in capital in order to win a government contract with the federal government to be the preeminent "clean coal energy" provider for the United States. This program was termed and marketed as the "Pay-to-Play" program. In furtherance of that objective, Herring cultivated a relationship with Plaintiff, encouraged her involvement with

1

Vivify, and induced Plaintiff herself personally to provide substantial financial support and investments to Vivify.

2.     Plaintiff brings this action (the "Action") against Defendants Jason Herring and Vivify Technology Inc. ("Defendants") under Sections 5, 12 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77l, and 77o. This Action is brought on behalf of Plaintiff who invested in securities offered by Defendant Vivify between approximately August 2025-April 2026 (the "Period").

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this Action arises under the laws of the United States, including the Securities Act of 1933 and the Securities Exchange Act of 1934.

4.     This Court also has subject matter jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), which provides that federal district courts have exclusive jurisdiction over violations of the Exchange Act, including claims brought under Sections 10(b) and 20(a) and SEC Rule 10b-5.

5.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1337, because the claims arise under Acts of Congress regulating commerce, including the federal securities laws.

6.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims, including claims for breach of fiduciary duty, breach of contract, violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213, Florida General Business Law, and because those claims form part of the same case or controversy as Plaintiff' federal securities claims.

7.      This Court also has diversity jurisdiction under 28 U.S.C. § 1332, because this is an action for damages in excess of $75,000, exclusive of attorney's fees, prejudgment interest, and costs.

8.      The Securities Act requires any security that is offered or sold to be registered with the United States Securities and Exchange Commission ("SEC"). The legislative purpose is to protect the public by requiring various disclosures so that investors can better understand the security that is being offered or sold. Under Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), a "security" is defined to include a "note" and an "investment contract."

9.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332: Plaintiff is a domiciliary of Tennessee; Defendants Herring and Vivify Technology are domiciled in Florida; the amount in controversy exceeds $75,000.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claim occurred in Delray Beach, Palm Beach County, Florida within the Southern District of Florida, Palm Beach Division.

## THE PARTIES

### Plaintiff, J. Louise Dietzen

11.     Plaintiff, J. LOUISE DIETZEN ("Plaintiff" or "Ms. Dietzen") is a natural person who, until August 2025, resided in Nashville, Tennessee before relocating to Delray Beach, Florida. Plaintiff is an attorney and mediator of Mediate The Southeast LLC. From August 2025 to April 2026, Ms. Dietzen was the Director of Global Relations and Capital Development of Vivify Technology, in addition to an investor in the company.

3

12.     Plaintiff invested in excess of three million dollars ($3,500,000) of his personal funds in Vivify's "Pay-to-Play" program in reasonable reliance upon material representations and omissions made by Defendants, which representations were false and fraudulent.

13.     Plaintiff relocated to Delray Beach, Florida at Defendants' insistence and in reliance upon Defendants' representations and promises that they would purchase a home for Plaintiff in Florida and make the payments thereon. These representations and promises were material inducements to Plaintiff's relocation and were false when made or made with reckless disregard for their truth.

**Defendants, Jason Herring and Vivify Technology**

14.     Defendant Herring is a natural person residing in Delray Beach, Florida.

15.     At all relevant times, Herring authorized, directed, ratified, adopted, and/or knowingly benefited from the fraudulent acts and misrepresentations of the "Pay-to-Play" program described herein. Herring personally repeated, endorsed, and promoted material misrepresentations to Plaintiff and others, knowing or recklessly disregarding their falsity, and thereby induced Plaintiff to invest substantial funds and undertake financial obligations to her detriment. *See* Exhibits 1-6 attached hereto.

16.     Vivify received, retained, accepted, and benefited from funds and other financial advantages obtained through the misrepresentations and fraudulent conduct alleged herein and is liable for the acts of its agents and representatives committed within the scope of their authority and for Vivify's benefit.

**STATEMENT OF FACTS**

A. **INITIAL CONTACT AND RECRUITMENT**

17.     On or about August 2025, Plaintiff was introduced to Defendants.

4

18. At all relevant times, Defendants represented that Vivify was a legitimate and profitable technology company requiring capital for growth and business operations. *See* Exhibits 1-6.

19. Defendants, directly and through their agents, employees, representatives, and associates, solicited Plaintiff to become involved with Vivify and to provide substantial financial support to the company.

20. During numerous conversations occurring between August 2025 and April 2026, Defendants made representations as alleged below concerning Vivify's business operations, financial condition, expected revenues, business opportunities, and ability to repay invested funds. *See* Exhibits 1-6.

### B.  PROMISES MADE TO PLAINTIFF

21. Defendants promised Plaintiff that raising $15,000,000 in capital would allow Vivify to qualify and secure the "Pay-to-Play" program for federal contracts, indicating that significant profits would follow.

22. Defendants made repeated representations that Plaintiff would be financially protected and would not incur losses as a result of her involvement with Vivify. In fact, he promised her a 2x return on any personal investments and commission of the equal amount of any of her investors. *See* Exhibits 7-9.

23. Defendants specifically represented and promised that they would purchase a residence for Plaintiff in Delray Beach, Florida and would make the payments associated with that residence.

24.  Defendants further represented that Plaintiff would be compensated through a $1million "signing bonus," $1 million salary, and a $1.7 million house in Delray Beach, Florida,

and would reap dividends from the investments raised including but not limited to twice the amount of her investment, totaling $3,500,000, plus the same amount of money (a minimum of $3,5 million) obtained by Plaintiff from third parties for investment in Vivify. *See* Exhibits 7-8.

25.     Defendants made these representations for the purpose of inducing Plaintiff to relocate and inducing Plaintiff to provide financial support and investment capital.

26.     In reasonable reliance upon Defendants' representations and promises, Plaintiff relocated to Delray Beach, Florida on or about August 2025, induced investment into Vivify and invested $3,500,000 of her own funds into Vivify.

### C.  PLAINTIFF'S INVESTMENTS AND FINANCIAL CONTRIBUTIONS

27.     Beginning on or about October 2025, Plaintiff invested $200,000 in Vivify.

28.     Between October 2025 and April 2026, Plaintiff transferred additional funds to Defendants and/or Vivify on multiple occasions.

29.     In total, Plaintiff invested in or advanced funds to Vivify in excess of $3,500,000.

30.     Defendants represented that Plaintiff's funds would be used for legitimate business purposes, including but not limited to the funding and development fraudulent contracts.

31.      Plaintiff made each investment in reliance upon Defendants' material representations and omissions.

### D.  FRAUDULENT MISREPRESENTATIONS AND OMISSIONS

32.     Defendants represented that Vivify was financially stable and capable of meeting its obligations to investors. *See* Exhibits 1-6.

33.     Defendants represented that investor funds would be used exclusively for legitimate corporate purposes. *See* Exhibits 1-6.

34. Defendants failed to disclose material facts, including but not limited to:

a. that Vivify lacked valid contracts, enforceable agreements, intellectual property assets, committed funding sources, and supporting corporate documentation necessary to support Defendants' representations concerning the company's value and operations;

b. the true nature, risks, and political implications associated with the matters and opportunities being presented to Plaintiff;

c. that investor funds were not being handled through ordinary arms-length business practices and were instead being deposited into, controlled by, or transferred through accounts associated personally with Herring;

d. that Vivify lacked sufficient cash reserves, liquidity, and available funds to satisfy its obligations and representations to investors;

e. that Vivify lacked the products, services, capabilities, customers, and commercial infrastructure represented by Defendants and was unable to provide the goods and services that Defendants claimed could be offered to customers and investors;

f. that Defendants' representations concerning Herring's history of successful companies, revenue generation, fundraising efforts, business opportunities, and financial performance were false, misleading, exaggerated, or unsupported by existing facts; and

g. such other material facts as were necessary to make Defendants' affirmative statements not misleading under the circumstances.

35. Defendants knew, or recklessly disregarded, that the foregoing representations were false and misleading when made.

36.     Defendants continued making such representations after receiving Plaintiff's funds.

37.     Plaintiff reasonably relied upon Defendants' representations and omissions in deciding to invest funds in Vivify and to continue supporting the company following the investment.

38.     Plaintiff was unaware of the true facts concealed and omitted by Defendants and had no reasonable means of independently discovering the falsity of Defendants' representations before transferring funds.

39.     Defendants intended and expected that Plaintiff would rely upon their representations concerning Vivify's financial condition, business operations, assets, opportunities, funding, and prospects for success.

40.     In reasonable reliance upon Defendants' representations and omissions, Plaintiff transferred substantial funds to Defendants and/or Vivify and refrained from taking actions that would have protected Plaintiff's financial interests.

41.     Had Plaintiff known the true facts concerning Vivify's financial condition, business operations, assets, liabilities, use of investor funds, and the falsity of Defendants' representations, Plaintiff would not have invested funds in Vivify and would not have continued to provide financial support.

42.     As a direct and proximate result of Defendants' fraudulent representations and omissions, Plaintiff suffered damages in an amount to be determined at trial, including but not limited to the loss of invested funds, lost opportunities, out-of-pocket costs, consequential damages, and other economic losses.

43. Defendants' conduct was intentional, willful, malicious, and carried out with conscious disregard for Plaintiff's rights and interests, thereby entitling Plaintiff to recover punitive or exemplary damages to the fullest extent permitted by law.

44. Plaintiff has been further damaged by having to expend time, resources, and expenses investigating Defendants' misconduct and pursuing recovery of the funds and losses caused by Defendants' fraudulent conduct.

45. The damages suffered by Plaintiff were the foreseeable, direct, and natural consequence of Defendants' fraudulent representations, omissions, and misconduct.

## E. PARTICIPATION OF JASON HERRING

46. Herring personally communicated with Plaintiff on daily occasions regarding the subject misstatements.

47. Herring ratified, adopted, approved, and perpetuated the misrepresentations made to Plaintiff concerning Vivify and Plaintiff's investments therein.

48. Herring repeatedly reassured Plaintiff that Defendants would fulfill their promises, including promises relating to Plaintiff's residence, repayment, compensation, and the safety of Plaintiff's investments.

49. Despite knowledge of facts inconsistent with those representations, Herring did not disclose and omitted same, and continued to encourage Plaintiff to provide funds and maintain confidence in Vivify.

50. Herring knowingly accepted and retained the benefits derived from Plaintiff's investments.

## F. BENEFIT TO VIVIFY

51. Vivify received and retained funds provided by Plaintiff.

52.     Upon information and belief, Plaintiff's funds were deposited into accounts owned or controlled by Jason Herring and/or used for his benefit.

53.     Herring knowingly accepted the benefits of the misrepresentations and fraudulent conduct committed by Plaintiff and other agents acting on its behalf.

54.     Vivify retained the proceeds of Plaintiff's investments despite failing to fulfill the promises and representations made to Plaintiff.

## G.  DISCOVERY OF THE FRAUD

55.     On or about April 2026, Plaintiff discovered facts indicating that Defendants' prior representations were false.

56.     Specifically without limitation, Plaintiff subsequently learned that:

a.  Defendants' representations concerning Vivify's business operations, investment opportunities, revenue generation, and financial stability were false, and that Defendants had failed to repay investors and had failed to make promised dividend and other investment-related payments;

b.  Vivify did not possess the legitimate contracts, customer agreements, commercial relationships, or business opportunities that Defendants had represented existed;

c.  Vivify lacked meaningful intellectual property, proprietary technology, or other legitimate assets sufficient to support Defendants' representations regarding the company's value, capabilities, or prospects for growth; and

d.  Vivify was experiencing severe liquidity and solvency issues and lacked the financial resources necessary to satisfy its obligations to investors, creditors, and other stakeholders; and

e.  The purported business operations, growth opportunities, fundraising efforts, and financial strength presented by Defendants were largely illusory and constituted a smoke screen designed to induce Plaintiff and others to invest funds and continue providing financial support.

57.  Upon information and belief, substantial portions of Plaintiff's funds were used for purposes other than those represented to Plaintiff.

58.  Defendants failed and refused to return Plaintiff's funds despite repeated demands.

## H.  DAMAGES

59.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in excess of $3,500,000.

60.  Plaintiff has also suffered consequential damages, including relocation expenses, housing-related expenses, lost opportunities, professional damages, harassment, slander, defamation, violations of the EEOC, and other financial losses in an amount to be proven at trial.

61.  Defendants' conduct was intentional, willful, malicious, fraudulent, and in conscious disregard for Plaintiff's rights.

62.  Plaintiff has been damaged and continues to be damaged as a result of Defendants' conduct.

## COUNT I

**(Control Person Liability for Violation of the Securities Act Section 5, Section 12(a)(1) and Section 15 of the Securities Act)**
**As Against Jason Herring and Vivify Technology, Inc.**

63.  Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 62 above concerning Defendants' scheme to induce Plaintiff to invest in

Vivify through false representations and material omissions, including representations regarding Vivify's business prospects, the security and purpose of Plaintiff's investments, Defendants' promises to provide housing and financial support to Plaintiff, and Defendants' continued ratification and promotion of such representations while receiving and benefiting from Plaintiff's investments exceeding $3,500,000.

64. This claim is asserted pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o.

65. This claim is based on strict liability.

66. Section 15 of the Securities Act provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." Id. § 77o(a).

67. Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

12

68.     Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77(h) of this title." Id. § 77e(c).

69.     As alleged herein Vivify directly or indirectly and by other means made communications in interstate commerce or of the mails sold and offered securities without registering the securities offering or qualifying for an exemption from registration issued communication in interstate commerce or of the mails sold and offered securities without registering the securities offering or qualifying for an exemption from registration to all investors.

70.     Under Section 12(a)(1) of the Securities Act, any person who offers or sells a security in violation of Section 5 of the Securities Act shall be liable to the person purchasing such security from the offeror or seller and may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if the security is no longer owned.

71.     At the time of the violations of Sections 5 of the Securities Act Defendants controlled Vivify.

## COUNT II

**(For violation of Section 10(b) of the Exchange Act and Rule 10(B)-5)**
**As Against Jason Herring and Vivify Technology, Inc.**

72.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 62 concerning Defendants' scheme to induce Plaintiff to invest in Vivify Technology through false representations and material omissions, including representations regarding Vivify's business prospects, the security and purpose of Plaintiff's investments, Defendants' promises to provide housing and financial support to Plaintiff, and Defendants' continued ratification and promotion of such representations while receiving and benefiting from Plaintiff's investments exceeding $3,500,000..

73.     This claim is brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5 against Defendants.

74.     In connection with the offer and sale of securities, Herring and Vivify made untrue statements of material fact and omitted material facts necessary to make its statements not misleading. Vivify further employed schemes and artifices to defraud Plaintiff.

75.     Vivify failed to disclose material facts, including: (a) escalating liquidity and counterparty risk at Vivify; (b) Vivify's deteriorating financial condition; (c) known concentration of lending exposure creating immediate redemption risk; (d) assessments identifying Vivify as a high-risk borrower; and (e) the growing likelihood that Vivify users like the Plaintiff would be unable to withdraw their assets.

76.     Vivify knowingly omitted and misrepresented material facts, including continuing to solicit deposits into Vivify (at the times alleged by this complaint and upon further information continues to do so to the present date) while internally aware that Vivify faced severe liquidity pressures and heightened default risk.

**COUNT III**

14

**(Violation of the Florida Deceptive and Unfair Trade Practice Act Fla. Stat. Ann. §§
501.201-501.213)
As Against Vivify Technology Inc.**

77.     Plaintiff realleges and incorporates by reference the allegations set forth in
Paragraphs 1 through 62 concerning Defendants' scheme to induce Plaintiff to invest in Vivify
through false representations and material omissions, including representations regarding
Vivify's business prospects, the security and purpose of Plaintiff's investments, Defendants'
promises to provide housing and financial support to Plaintiff, and Defendants' continued
ratification and promotion of such representations while receiving and benefiting from Plaintiff's
investments exceeding $3,500,000.

78.     Plaintiff brings this claim under the Florida Deceptive and Unfair Trade Practices
Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213, on behalf of herself.

79.     Defendants engaged in "trade or commerce" within the meaning of FDUTPA by
marketing, offering, soliciting, receiving, and transmitting digital assets and U.S. dollars from
consumers in Florida, and other states, including Plaintiff.

80.     Defendants represented to consumers that the Vivify "Pay-to-Play" program was
safe, secure, and subject to adequate risk controls, and that customers could redeem their digital
assets at any time. Vivify also represented that it performed prudent due diligence on Herring as
the sole borrower of investor assets.

81.     Vivify omitted material information necessary to prevent these representations
from being misleading, including:

   a.   that Vivify's liquidity and financial condition had materially deteriorated;

   b.   that Vivify was experiencing mounting redemption pressures and counterparty
        exposure;

   c.   that redemptions might not be honored; and

15

d.  that customers' ability to access their assets was wholly dependent on Vivify's solvency.

82.  Vivify continues to solicit deposits and maintain investment positions in investments despite knowledge, or reckless disregard, that substantial risks to liquidity, redemption, and asset safety existed.

83.  These acts and omissions were likely to mislead reasonable consumers and constitute deceptive and unfair trade practices under FDUTPA.

84.  As a direct and proximate result of Defendants' deceptive, unfair, and unlawful conduct, Plaintiff suffered actual damages, including loss of access to her financial assets, the appreciation of those assets, and other financial harm.

85.  Plaintiff seeks all available remedies under FDUTPA, including actual damages; declaratory and injunctive relief; prejudgment and post-judgment interest; and attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

## COUNT IV
**(Tortious Interference with Business Relationship)**
**As Against Vivify Technology Inc.**

86.  Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 62 concerning Defendants' scheme to induce Plaintiff to invest in Vivify through false representations and material omissions, including representations regarding Vivify's business prospects, the security and purpose of Plaintiff's investments, Defendants' promises to provide housing and financial support to Plaintiff, and Defendants' continued ratification and promotion of such representations while receiving and benefiting from Plaintiff's investments exceeding $3,500,000.

87. At all relevant times, Plaintiff had existing and prospective business relationships with investors, business associates, professional contacts, and other persons from whom Plaintiff reasonably expected economic benefit.

88. Defendants were aware of Plaintiff's business relationships and professional contacts and, in many instances, obtained knowledge of such relationships directly from Plaintiff.

89. Defendants intentionally and unjustifiably interfered with Plaintiff's business relationships by, among other things:

    a. inducing Plaintiff to use her professional reputation, business contacts, and relationships to promote Vivify and secure investment capital;

    b. making false and misleading statements concerning Plaintiff, Plaintiff's role, and Plaintiff's relationship with Vivify;

    c. using Plaintiff's name, reputation, and business relationships for Defendants' benefit while concealing material facts regarding Vivify's true financial condition and operations;

    d. causing damage to Plaintiff's credibility, reputation, and standing among existing and prospective business contacts; and

    e. disrupting Plaintiff's ability to maintain and develop business and investment relationships.

90. Defendants' interference was intentional, improper, and undertaken for Defendants' own financial benefit.

91. As a direct and proximate result of Defendants' conduct, Plaintiff's relationships with existing and prospective business contacts were harmed, disrupted, diminished, or lost.

92. Plaintiff has suffered damages, including but not limited to lost business opportunities, loss of professional goodwill, reputational injury, economic losses, and other damages in an amount to be determined at trial.

## COUNT V

**(Violation of the Florida Securities and Investor Protection Act)**
**As Against Vivify Technology Inc.**

93. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 62 above concerning Defendants' scheme to induce Plaintiff to invest in Vivify Technology through false representations and material omissions, including representations regarding Vivify's business prospects, the security and purpose of Plaintiff's investments, Defendants' promises to provide housing and financial support to Plaintiff, and Defendants' continued ratification and promotion of such representations while receiving and benefiting from Plaintiff's investments exceeding $3,500,000.

94. Vivify engaged in conduct that violated the Florida Securities and Investor Protection Act by offering and selling securities to Florida residents through their "Pay-to-Play" program under circumstances that were deceptive, misleading, and contrary to the protections guaranteed under Florida law. Vivify's promotional materials, platform disclosures, and communications to users created the false impression that the "Pay-to-Play" program was safe, fully redeemable, and supported by adequate risk management, when in fact Herring knew that Vivify was experiencing significant and escalating financial distress.

95. Vivify's omissions and misrepresentations had the effect of inducing Florida residents to entrust substantial assets to a program that was materially riskier than represented. Vivify's conduct violated the Act's provisions prohibiting fraudulent or deceptive practices in connection with the offer or sale of securities in the State of Florida.

96.     Plaintiff relied on Herring's representations when deciding to participate in the "Pay-to-Play" program. As a result of Vivify's statutory violations, Plaintiff suffered losses, including loss of access to assets and the appreciation of those assets. Plaintiff seeks all remedies available under the Act, including rescission, damages, interest, attorneys' fees, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself, demands a judgment against Defendants as follows:

(a) Declaring that Defendants actions, as set forth above, violate the federal and state laws set forth above;

(b) Awarding compensatory, special, consequential, punitive and exemplary damages against Defendants in an amount to be determined at trial;

(c) Awarding equitable and injunctive relief, including, without limitation, recission, restitution, and disgorgement;

(d) Awarding statutory relief under federal and state law;

(e) Awarding reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

(f) Awarding pre-judgment and post-judgment interest; and

(g) Granting such other and further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial.

Dated: August 11, 2026

Respectfully submitted,

*s/ Andrew R. Schindler*
Andrew Schindler
FBN 124845
*aschindler@grsm.com*

**GORDON REES SCULLY MANSUKHANI LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Tel: (305) 428-5329
*Attorneys for J. Louise Dietzen*

*/s/ Richard P. Sybert*
Richard P. Sybert, Esq.
(*Pro Hac Vice Forthcoming*)
rsybert@grsm.com

**GORDON REES SCULLY MANSUKHANI LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 696-6700
*Attorney for J. Louise Dietzen*

## VERIFICATION

I, J. Louise Dietzen, declare under penalty of perjury that I have read the foregoing Verified Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on <u>August 11, 2026</u>, in ___Glynn County, Georgia___.

By: _____